UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SCOTT A. FISHER, ET AL.,

        Plaintiffs,

v.

MICHIGAN BELL TELEPHONE
COMPANY,

        Defendant.

Case No. 09-10802

Honorable Nancy G. Edmunds

_____/


**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CLASS
CERTIFICATION AND JUDICIAL NOTICE [21]**


This action is brought by two named Plaintiffs, Scott A. Fisher and Jessie J. LaForest,

on behalf of themselves and other similarly situated employees, against their employer,

Defendant Michigan Bell Telephone Company, and it is joined by 104 current and former

call center employees of Defendant (collectively "Plaintiffs").    Plaintiffs allege that

Defendant violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et*

*seq.*, by failing to pay them and other similarly situated employees at Defendant's Saginaw,

Southfield, Detroit, Kalamazoo, and Port Huron call center locations for time spent

performing necessary work tasks before and after their scheduled shifts and during their

unpaid lunch break.

This matter comes before the Court on Plaintiffs' motion asking the Court to

conditionally certify the proposed class, as permitted under Section 216(b) of the FLSA; to

approve the proposed notice to putative class members; and to require Defendant to

produce a list, in Excel format, of certain information pertaining to all persons employed by Defendant Michigan Bell Telephone Company ("Michigan Bell") in sales, service, and similar positions in any of Defendant's Detroit, Southfield, Saginaw, Kalamazoo, or Port Huron call centers during the three years preceding the date of an order conditionally certifying the class. For the reasons stated more fully below, this Court GRANTS Plaintiffs' motion.

## I.    Facts

### A.  Parties

Plaintiffs and those "similarly situated" to Plaintiffs are individuals who were or currently are employed by Defendant in customer service, sales, and similar positions in Defendant's call centers who allege that they were not paid for some or all of their pre-shift, lunch break, and post-shift work activities. (Am. Compl. at ¶ 8.) Defendant Michigan Bell is a subsidiary of AT&T, Inc. Defendant's call centers involved in this litigation are located at: (1) 4075 Bay Road, Saginaw, Michigan 48603 ("Saginaw call center"); (2) 16025 Northland Drive, Southfield, Michigan 48075 (former location) and 23500 Northwestern Highway, Southfield, Michigan 48075 (new location) (collectively "Southfield call centers"); (3) 105 E. Bathune Street, Detroit, Michigan 48202 ("E. Bathune Detroit call center"); (4) 444 Michigan Avenue, Detroit, Michigan 48226 ("Michigan Ave. Detroit call center"); (5) 133 W. Lovell, Kalamazoo, Michigan 49007 ("Kalamazoo call center"); and (6) 112 Grand River Ave., Port Huron, Michigan 48060 ("Port Huron call center"). (Brennan Aff. at ¶ 2.) Plaintiffs have or are working at the above call centers. The breakdown is as follows: 7 in Defendant's Southfield call center; 98 in Defendant's Saginaw call center; 1 in

Defendant's E. Bathune Detroit call center; and 1 also worked in Defendant's Kalamazoo call center before the proposed class period.[1]  (Pls.' Ex. 1, 104 Consent Forms.)

### B.  Plaintiffs' Supporting Declarations

In support of their motion, Plaintiffs also submit the Declarations of 67 of the consent filers.  (Pls.' Ex. 2, 67 Decl.)  Of these Declarants, 6 work/worked in Defendant's Southfield call center; 60 work/worked in Defendant's Saginaw call center; 1 work/worked in Defendant's E. Bathune Detroit call center; and 1 also worked in Defendant's Kalamazoo call center before the proposed class period. (*Id.*)  These 67 Declarations similarly aver the following.

Regardless of their titles or locations, Plaintiffs performed the same types of jobs in call centers that were structured in the same way; e.g., taking incoming calls from customers who wish to start, add, change or disconnect service; helping callers with equipment and billing questions; and selling AT&T equipment, services, and upgrades. Plaintiffs are paid a base hourly wage plus incentive-based bonuses.  (Pls.' Ex. 2, Decl. ¶ 3.)

Plaintiffs are subject to the same policies and practices of Defendant.  Defendant refers to Plaintiffs' scheduled shift as a "tour," and each scheduled tour is eight hours long plus an additional unpaid lunch break.  (*Id.* at ¶ 4.)  Defendant requires Plaintiffs to meet a strict "adherence" requirement, which is a measure of how closely the work activity of each hourly employee taking calls from customers matches his or her scheduled tour.  (*Id.*

---

[1]Plaintiffs assert that this one individual used to work at Defendant's Kalamazoo call center before the class period and worked at the Saginaw call center during the class period.  (Pls.' Mot. at 11, n.6.)

at ¶ 5.) Defendant issues "Adherence Reports" that reflect this correlation. (*Id.*) Defendant also requires Plaintiffs to meet an acceptable score on their Personal Achievement Review ("PAR") -- a measurement that reflects sales of AT&T services and equipment, duration of phone calls, and effectiveness with customers -- which it monitors and reviews on a monthly basis. (*Id.* at ¶ 6.) Defendant pays Plaintiffs based on their scheduled tours. (*Id.* at ¶ 13.) A tour is either nine hours long, including a sixty minute unpaid break, or eight and one-half hours long, including a thirty minute unpaid break. (*Id.* at ¶ 4.)

### 1. Pre-Shift Work

Plaintiffs performed the same off-the-clock work for the same reasons. Defendant's managers told Plaintiffs that they needed to arrive early and log in to the computer systems so they were able to take phone calls promptly at the scheduled start of their shifts. (*Id.* at ¶ 7.) A Plaintiff's adherence suffers if he or she is not logged into the phone system at the beginning of his or her tour. (*Id.*) The managers also instructed Plaintiffs to have certain software applications open to properly service customers. (*Id.*) As a result, Plaintiffs logged onto numerous software applications before the start of their tours. (*Id.*) It takes approximately ten to fifteen minutes to load the computer and these software applications. (*Id.*) Once Plaintiffs had these applications open and it was time for their scheduled tour to begin, they logged into Defendant's phone system and began taking calls from customers. (*Id.*) Failing to do so could negatively affect their PAR and further subject them to possible written warnings that could ultimately result in suspension or termination. (*Id.*)

### 2. Work Over Unpaid Lunch Break

During lunch breaks, most Plaintiffs frequently had to finish updating notes on customers' accounts, read company emails in order to keep up to date with the latest sales promotions, and perform other tasks to meet quotas established by Defendant.  Plaintiffs were not paid for this work.  (*Id.* at ¶ 8.)

### 3.  Post-Shift Work

Plaintiffs are also frequently caught on incoming calls that last beyond the end of their scheduled tour.  (*Id.* at ¶ 9.)  Defendant's "rounding" policy is that, if such a call extends more than seven minutes past the end of a tour, a Plaintiff will be compensated for 15 minutes.  If, however, the call fails to extend past that time, a Plaintiff will receive no compensation for the time worked.  (*Id.*)  Although Plaintiffs were paid for 15 minutes on the rare occasion when a call would extend beyond the seven minute threshold, this rounding policy failed to fairly and accurately compensate them for their post-shift work.  Moreover, after Plaintiffs' scheduled tour ended, they were required to log off the phone and then log off the computer system.  (*Id.*)

### 4.  Overtime

 Based on Plaintiffs' pre-shift, lunch, and post-shift work, they performed between 15 and 60 minutes of unpaid work per day.  (*Id.* at ¶ 10.)  Although Defendant has an overtime form for Plaintiffs' use, their managers have routinely advised Plaintiffs that these forms are for time spent on the phone with a customer that last longer than seven minutes past the end of their tour.  (*Id.* at ¶ 12.)  Plaintiffs have not been informed that they are supposed to record their daily pre-tour and post-tour activities such as logging in and out of Defendant's computer systems, finishing up calls that last less than seven minutes past the end of their tours, filling orders, completing customer call backs or completing paperwork,

all of which they regularly perform. (*Id.*) Likewise, Plaintiffs have not been told that they will be compensated for those occasions when they end up performing these additional tasks during part of their unpaid lunch. (*Id.*) Plaintiffs aver that their supervisors regularly observed them performing work before their shifts, during their lunches, and after their scheduled shifts. (*Id.* at ¶ 14.) Based on Plaintiffs' personal observations and conversations with their call center co-workers, it is their understanding that they are all consistently denied pay for the above-mentioned tasks. (*Id.* at ¶ 15.) Plaintiffs believe that others would be interested in joining this action. (*Id.*)

### C.  Michigan Bell's Post-Litigation Changes

In November 2008, allegedly after learning about this and similar FLSA litigation against AT&T subsidiaries, Defendant sent out a memorandum stating that Plaintiffs were not to log into their computers and computer applications before the start of their tours. (*Id.* at ¶ 11; (Def.'s Ex. 5, Mansfield Decl. at ¶ 8.)

## II.  Analysis

Plaintiffs move for the conditional certification of the following collective class:

> All persons who are or have been employed by Michigan Bell Telephone Company in sales, service and similar positions in any of its Detroit, Southfield, Saginaw, Kalamazoo, or Port Huron call centers from [three years back from the date the Court orders conditional certification] to the present.

(Pls.' Mot. at 1.)  The Court begins its analysis with a discussion of the general principles that apply to conditional class certification under § 216(b) of the FLSA.

### A.  Conditional Class Certification - General Principles

Plaintiffs seek conditional class certification and judicial notice of a collective action as allowed under § 216(b) of the FLSA.  Section 216(b) provides that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).  As the Sixth Circuit recently observed, "[u]nlike class actions under Fed. R. Civ. P. 23, collective actions under FLSA require putative class members to opt into the class," and "[t]hese opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action."  *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009).  Suits brought under § 216(b) of the FLSA are thus called "collective actions;" not class actions.  *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

Section 216(b) "establishes two requirements for a representative action" brought by employees "in their own behalf and for 'similarly situated' persons."  *Id.*  First, "the plaintiffs must actually be 'similarly situated,'" and second, "all plaintiffs must signal in writing their affirmative consent to participate in the action."  *Id.* (citing 29 U.S.C. § 216(b) and *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989)).  Accordingly, the district court's task is to "first consider whether plaintiffs have shown that the employees to be notified" of the collective action "are, in fact, 'similarly situated.'"  *Id.*  If the plaintiffs meet this burden, then "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit."  *Id.*

7

Although the phrase "similarly situated" is undefined, "the Sixth Circuit has recognized that district courts typically 'follow[ ] a two-stage certification process . . . to determine whether the opt-in plaintiffs and lead plaintiffs [are] similarly situated.'" *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, *1 (E.D. Ky. Sept. 28, 2009) (quoting *O'Brien*, 575 F.3d at 583 and citing *Comer*, 454 F.3d at 546).  The first stage of § 216(b) certification, also known as the "notice stage," takes place early in the litigation; i.e., "at the beginning of discovery." *Comer*, 454 F.3d at 546.  It is here where "the court determines whether the suit should be 'conditionally certified' as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate." *Noble*, 2009 WL 3154252 at *1.  The second stage occurs much later; "after all of the opt-in forms have been received and discovery has been concluded." *Comer*, 454 F.3d at 546 (internal quotation marks and citation omitted).

Plaintiffs' motion here involves this first or "notice" stage and seeks only conditional, not final certification.  "The lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien*, 575 F.3d at 584.  Plaintiffs' burden under the FLSA is less stringent than that required for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Id.* (observing that the district court erred when it "applied a Rule 23-type analysis" and found "that the plaintiffs were not similarly situated because individualized questions predominated.").  To be considered "similarly situated," it is sufficient if the plaintiffs "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct." *Id.* at 585.  This is a sufficient but not a necessary condition for a finding that a group of employees is similarly situated. *Id.*  Moreover, as the Sixth Circuit observed in

8

*Comer*, "[t]he plaintiff must show only that his position is similar, *not identical*, to the positions held by the putative class members."  *Comer*, 454 F.3d at 546-47 (internal quotation marks and citations omitted and emphasis added).  Accordingly, district courts generally allow the lead plaintiffs to "show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp.2d 545, 548 (E.D. Mich. 2004) (internal quotation marks and citations omitted).  *See also Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009) (same).  This Court applies that standard here.

This "first stage" or notice standard is "fairly lenient," requiring only that Plaintiffs "submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists."  *Olivo*, 374 F. Supp.2d at 548 (internal quotation marks and citation omitted).  "[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Brasfield*, 257 F.R.D. at 642.

**B.  Plaintiffs Have Met Their Lenient Burden for Conditional Certification**

Despite Defendant's arguments to the contrary, Plaintiffs here have presented sufficient evidence showing that they and potential plaintiffs were "similarly situated" victims of a common policy or plan of Defendant's that violated the FLSA:  (1) Defendant required Plaintiffs to be open and available to take a call at the beginning of their tour and thus required Plaintiffs to log-in to Defendant's computer systems before the start of their tour; (2) most calls that extend beyond the end of a tour last less than seven minutes, thus Plaintiffs are systematically disadvantaged by Defendant's "rounding" policy; and (3)

9

Defendant's expectations concerning employee performance required off-the-clock work. Plaintiffs also present authority showing that, on similar facts, the vast majority of United States District Courts have routinely granted conditional certification to call center employees alleging similar "off-the-clock" FLSA violations. *See, e.g., Bishop v. AT&T Corp.*, 256 F.R.D. 503 (W.D. Penn. 2009) (granting the plaintiff's motion to conditionally certify a collective action for the defendant's call centers in various states); *Russell v. Illinois Bell Tele. Co.*, 575 F. Supp.2d 930 (N.D. Ill. 2008) (same); *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp.2d 1181 (D. Minn. 2007) (same for nationwide collective action); *Sherrill v. Sutherland Gobal Servs., Inc.*, 487 F. Supp.2d 344 (W.D. N.Y. 2007) (same for the defendant's call centers in various states); *Clark v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp.2d 601 (S.D. Texas 2005) (same for nationwide collective action).

Here, in addition to their detailed Amended Complaint, Plaintiffs have submitted declarations of 67 opt-ins and have provided the deposition testimony of eight opt-ins supporting their claim that they are all victims of a common policy or plan of Defendant's that violates the FLSA. Defendant has submitted declarations in an attempt to refute Plaintiffs' allegations. At this first stage of § 216(b) certification, however, the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations. *See Brasfield*, 257 F.R.D. at 642. Rather, those tasks are addressed at the second stage.

This Court rejects Defendant's argument that Plaintiffs' declarations should be disregarded because they are not based on personal knowledge and contain inadmissible hearsay. Similar to the declarants in *Bishop*, the declarants here aver that their supervisors were aware of Defendant's alleged illegal practices. This Court, like the court in *Bishop*,

observes that "[s]uch awareness can reasonably be inferred at this preliminary stage." *Bishop*, 256 F.R.D. at 508.  Moreover, evidentiary issues similar to those raised by Defendant here about the admissibility of Plaintiffs' declarations have been repeatedly rejected by district courts in the Sixth Circuit.  *See Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 639 (W.D. Tenn. 2009); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367-69 (E.D. Tenn. 2006).  Rather, those courts "have held that plaintiff's evidence on a motion for conditional certification" is not required to "meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of the litigation would defeat the purpose of the two-stage analysis under Section 216(b)." *Id.* (internal quotation marks and citations omitted).  Because "final disposition" is not an issue "at the conditional certification stage," "requiring a plaintiff to present evidence in favor of a conditional certification that meets the hearsay standards of the Federal Rules of Evidence fails to taken into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis of his case." *Id.* (internal quotation marks and citation omitted).  For these same reasons, this Court rejects Defendant's arguments attacking Plaintiffs' declarations.


### 1.  Plaintiffs Have Shown a Common Policy or Plan that Violates the FLSA

Plaintiffs have presented evidence that declarants were paid in the same manner. (Pls.' Ex. 2, Decl. at ¶ 3.)  Plaintiffs also present evidence that (1) Defendant expected them to be ready to take a call at the beginning of their scheduled tours, thus requiring them log in to Defendant's computer systems before they began their tours; (2) they labored under

Defendant's PAR, adherence and average call handle time policies that led to off-the-clock work; and (3) Defendant's post-shift "rounding" policy systematically disadvantaged them. (*Id.* at ¶¶ 7, 9; Fisher Dep. at 80-81; Hillard Dep. at 163-64; Sharpley Dep. at 91-95; LaForest Dep. at 111-13, 185-93; McCloud Dep. at 150, 155-56; Brown Dep. at 112-13; and Fulton Dep. at 172-78.)  This evidence is sufficient to support Plaintiffs' claim that any FLSA violation was not merely the result of individual rogue supervisors.  *See Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, *5 (M.D. Tenn. Sept. 26, 2006) (observing that, if there is evidence that the decision makers all employed the same practices, it is reasonable to infer that any FLSA violation was not coincidental).

Despite Defendant's arguments to the contrary, Plaintiffs need not show that the challenged policy is in writing.  Likewise, that Defendant has a procedure for obtaining overtime compensation that Plaintiffs could use and has a written Code of Business Conduct that prohibits "off-the-clock" work, does not preclude conditional certification.  *See, e.g., Bishop v. AT&T*, 256 F.R.D. at 507 (rejecting similar arguments, observing that they ignore the declarants' claims that they were "victimized by the contradictory interplay between AT&T's expectation of readiness at the start of the employees' tour and when AT&T begins to calculate the hours worked by those employees"); *Burch*, 500 F. Supp.2d at 1188 (observing that "at this early stage of litigation, the mere fact that [the defendant] has a written policy does not defeat Plaintiffs' motion in light of Plaintiffs' countervailing evidence of a centralized policy to not pay overtime"); *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 WL 2885230, *7 n.6 (E.D. Ky. July 22, 2008) (refusing to decertify class where the plaintiffs' deposition testimony and affidavits supported their contention that the defendant had an unwritten policy that violated the FLSA); *Musarra v.*

12

*Digital Dish, Inc.*, No. C2-05-545, 2008 WL 818692, *5 (S.D. Ohio Mar. 24, 2008) (rejecting

similar arguments as "side-step[ing] Plaintiffs' contention that the Defendant was officially

putting one policy on paper, but unofficially threatening and enforcing a separate

practice.").

### 2.  Plaintiffs Have Shown that Putative Class Is Similarly Situated

Defendant next argues that Plaintiffs have not and cannot make the requisite showing

that the putative class is similarly situated because the targeted employees worked in

different facilities and business units, had different job duties, and were supervised by

different managers. Defendant's arguments are rejected.  As observed by the Sixth Circuit,

"[t]he plaintiff must show only that his position is similar, *not identical*, to the positions held

by the putative class members."  *Comer*, 454 F.3d at 546 (internal quotation marks and

citation omitted and emphasis added).  Numerous courts have similarly observed that

"disparate factual and employment settings of the individual plaintiffs should be considered

at the second stage of analysis" rather than at the first stage.  *White*, 236 F.R.D. at 373

(citing cases).  *See also Bishop*, 256 F.R.D. at 507 (observing that, at the first stage of §

216(b) analysis, the defendant's "[e]numerating the specifics of how each call center

accounts for employee work hours does not counter an allegation of common policy of

denying payment for such hours").  At this initial stage, Plaintiffs have established that they

are similar enough to proceed collectively through discovery.

### 3.  Conditional Certification is Warranted for Identified Call Centers

Defendant further argues that Plaintiffs' failure to present evidence of viable claims

from the Port Huron, Detroit Consumer, Detroit Credit and Collection, and Kalamazoo call

centers makes conditional certification of those call centers inappropriate.  This Court

disagrees.  As recognized by other district courts considering this issue, if Plaintiffs provide sufficient evidence of a company-wide practice through declarations of present and former employees at other locations, then the court is justified in "sending notice to similarly situated employees" at all locations at issue in the litigation.  *Russell*, 575 F. Supp.2d at 937.  Although the two opt-in Plaintiff/deponents from the Kalamazoo, and both Detroit call centers[2] may not themselves have viable claims during the statutory period, this does not undermine the fact that Plaintiffs have provided relevant evidence supporting the inclusion of these call centers in the class so that other putative class members, who have viable claims, may receive notice of this action.[3]  Moreover, although there are currently three opt-ins from the Detroit Consumer call center, it is of no consequence that they have not yet filed declarations.  *See Russell* 575 F. Supp.2d at 937 (rejecting the defendant's argument that the plaintiff's evidence was insufficient, observing that "affidavits from current and former employees of the other three locations," was sufficient "to justify sending notice to similarly situated employees at all four locations.").  Finally, Defendant's own declarations and exhibits support Plaintiffs' claims that putative Plaintiffs in the Port Huron and Kalamazoo call centers are similarly situated to the Plaintiffs in Defendant's other call centers.  (Def.'s Ex. 7, Richard Phillips Decl.; Ex. 8, John Simpson Decl.)  At this initial

----

[2]Wayne Goff worked at the Kalamazoo call center.  (Pls.' Ex. 2, Goff Decl. ¶ 2; Goff Dep. at 24-25.)  Glenda Sharpley worked at the Detroit Consumer and Detroit Credit and Collections call centers and testified about Defendant's policies and practices at these call centers.  (Pls.' Ex. 2, Sharpley Decl. ¶ 2; Sharpley Dep. at 14-16, 24-25, 35-36, 62-63.)

[3]Plaintiffs reassure the Court that they will be diligent in evaluating and promptly withdrawing untimely claims.  *See* Reply at 9, n.16.

stage, Plaintiffs have made a sufficient showing to encompass all of Defendant's call centers at issue in this litigation.

The Court now addresses Plaintiffs' proposed judicial notice.

### C.  Plaintiffs' Proposed Notice[4]

The Supreme Court has acknowledged that judicial notice to a putative class in FLSA collective actions is proper in "appropriate cases[.]"  *Hoffmann-LaRoche*, 493 U.S. at 169. Having determined that Plaintiffs have shown that the employees to be notified are similarly situated with them, this Court has discretion "to authorize notification" of those individuals "to allow them to opt into the lawsuit."  *Comer*, 454 F.3d at 546.   Judicial notice is appropriate here for several reasons.  First, unlike class actions under Rule 23, conditional certification of a collective action under § 216(b) of the FLSA does not toll the statute of limitations for potential plaintiffs.  *Id.*  Accordingly, an employee who does not opt-in by filing a signed consent with the Court cannot recover.  *See* 29 U.S.C. § 216(b).  Thus, judicial notice protects these claims by informing similarly situated employees of the facts needed to make an informed decision whether to opt-in.  *Hoffmann-LaRouche*, 493 U.S. at 170. Second, judicial notice promotes judicial economy, helps avoid the "multiplicity of duplicative suits" inherent in these types of lawsuits, and notifies putative plaintiffs of an economically feasible litigation option.  *Id.* at 172.  Finally, Plaintiffs' proposed notice uses language nearly identical to that found acceptable in other FLSA actions.  (Pls.' Ex. 17, examples of notices, including those used in the *Bishop* and *Russell* cases.)

---

[4]Plaintiffs have attached a copy of their Proposed Notice.  (Pls. Ex. 16.)

Defendant raises a number of concerns with Plaintiffs' proposed notice.  The Court addresses each.  First, despite claims to the contrary, the notice does provide a fair and accurate description of the scope of the putative class.  (*Id.*)  Second, the statement at the end of the notice that "[t]he Court has taken no position" on the parties' claims and defenses is sufficient.  There is no need to move the statement to the front page.  Third, the notice's statement that opt-ins will be represented by Plaintiff's counsel is not misleading.  As generally recognized in these collective actions, Plaintiffs' counsel is the counsel of record; and, if any potential plaintiff chooses to opt-in, that plaintiff will be represented by Plaintiffs' counsel.  This language does not imply that any potential plaintiff is precluded from choosing not to opt-in or choosing instead to litigate a claim individually.  *See Russell*, 575 F. Supp.2d at 939 (rejecting an argument identical to Defendant's here); *Bishop,* 256 F.R.D. at 509 (same).  Finally, Defendant asserts that the notice should include a statement that Plaintiffs may be required to testify in conjunction with this litigation.  Plaintiffs do not object to this inclusion, provided that it is included in a reasonable manner and location.  *See Russell*, 575 F. Supp.2d at939 (finding it reasonable to add, "While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court").  Accordingly, Plaintiffs' proposed notice shall include language similar to that found reasonable in *Russell*.

### D.  Plaintiffs' Discovery Request

Finally, Plaintiffs request that this Court order Defendant to produce a list, in Excel format, of the following information:

> the name, last known address, telephone number, dates of employment, location of employment, last four digits of their social security number, and date of birth of putative class members.

16

(Pls.' Mot. at 1-2.) Plaintiffs want this information within seven days after the Court issues its Order granting Plaintiffs' motion.

Defendant's only objection is to the production of telephone and social security numbers for the putative plaintiffs. (Resp. at 26.) Plaintiffs respond that they do not intend to call any putative plaintiffs. Rather, Plaintiffs' counsel intends to use the telephone numbers provided to run reverse directory searches for addresses for those putative plaintiffs who have outdated addresses. Discovery of telephone numbers for this purpose was approved by the court in *Russell*, 575 F. Supp.2d 939 (finding that the plaintiff's "interest in locating and contacting similarly situated employees outweighs [the employees'] limited privacy interests in a home telephone number"). This Court reaches the same conclusion as the *Russell* court for the same reason. Similar to the *Russell* court, this Court is also "unpersuaded that the partial Social Security numbers" that Plaintiffs seek are necessary. *Id.* at 939-40. Accordingly, although it will require Defendant to disclose the requested telephone numbers, it will not require disclosure of the last four digits of the requested social security numbers.[5]

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for conditional class certification and judicial notice is GRANTED.

s/Nancy G. Edmunds

---

[5]Plaintiffs concede that, if necessary, they can request that Defendant provide them with updated addresses.

Nancy G. Edmunds
United States District Judge

Dated:  October 22, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 22, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager